[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
The plaintiff, Charles Industries, Inc. (Charles) filed a single count complaint alleging that it sold and delivered goods to the defendant mPhase Technologies, Inc. (mPhase) and that mPhase owes $86,150.00 for these goods.
In its answer mPhase denied it owed the claimed amount, and asserted a special defense of equitable estoppel. mPhase also asserted "by way of set-off and counterclaim" four counts against Charles which reiterated the equitable estoppel claim, and alleged abuses of process and a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.
Charles has moved for summary judgment on its complaint. Oral argument was scheduled in early September at which time mPhase's motion for a continuance pursuant to Practice Book § 17-47 was considered. The motion was granted to the extent that each party was allowed to despose the principal actor of the other party. Those depositions have occurred, and the motion and objection thereto were submitted on the papers.
 Summary Judgment
Summary judgment may be rendered where there is no genuine issue as to any fact material to the case, and the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. In deciding such a motion the court must view the facts in the light most favorable to the nonmoving party. Appleton v. Board of Education, 254 Conn. 205 (2000). A fact material to the case is one which will make a difference in the case outcome. Union Oil v. Urban Development Commission, 158 Conn. 364
(1969). It is not the court's function in deciding a summary judgment motion to determine whether there are issues of fact. Nolan v.Borkowski, 206 Conn. 495 (1988). The summary judgment procedure is CT Page 16242 designed to eliminate the delay and expense associated with the litigation of facts and issues about which there can be no real dispute.Wilson v. New Haven, 213 Conn. 277 (1989).
 Discussion
Contrary to the allegations of its answer mPhase does not contest that it purchased goods from Charles for which it has not paid. (See Malicki Aff., Ex A; Dotoli Deposition, 6-11). The umpaid amount is $86,150. Id. There is no factual issue in dispute about this. The heart of mPhase's defense is the allegation that there was an agreement or acceptance by Charles that mPhase would pay the outstanding invoices on an installment basis, over time, as it had in the past, or when it had cash flow to do so. mPhase alleges that it relied on this agreement or understanding, paid other creditors as a result of this reliance, and thereby has weakened its ability to pay Charles.
The doctrine of equitable estoppel is well recognized in Connecticut. Recently our Supreme Court stated:
 "We [have] recognized that estoppel always requires proof of two essential elements: elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. Bozzi v. Bozzi, 177 Conn. 232, 242, 413 A.2d 834 (1979); Dupuis v. Submarine Base Credit Union, Inc., 170 Conn. 344, 353, 365 A.2d 1093
(1976); Pet Care Products, Inc. v. Barnett, 150 Conn. 42, 53-54, 184 A.2d 797 (1962).
Union Carbide Corp. v. City of Danbury, 257 Conn. 865, 872 [quoting fromBoyce v. Allstate Ins. Co. 236 Conn. 375 (1967).
Even accepting the facts alleged and sworn to by mPhase the doctrine of equitable estoppel fails to provide a defense to Charles' claim. In an affidavit, Gustave Dotoli, chief operating office of mPhase, stated that in February 2001, John Maliski, Charles credit manager
 promised that it would be acceptable for mPhase to make installment payments to Charles to discharge the then existing receivable in the amount of $97,925.94 over a reasonable period of time consistent with prior payments from mPhase in the past over a six (6) month CT Page 16243 period.
Dotoli Aff, August 23, 2001, ¶ 10. In reliance on Malicki's promise Dotoli stated that he made a payment of $11,775.94 on March 1, 2001 and that he used available cash on hand to pay other trade creditors of mPhase rather than paying the entire receivable. Id. ¶ 11-12.
At his deposition on October 4, 2001. Dotoli testified that the Charles produced was not selling well and,
 "I said, as payments come in through the other part of the business I would pay you [Charles], and pay you as rapidly as I can and he accepted that."
Dotoli Deposition, 16.
The undisputed facts show that the $11,775.94 payment on March 1 was the second smallest payment made by mPhase to Charles during their course of dealing, and it was the last. Further, the undisputed facts show that mPhase did not perform as promised. In his affidavit Dotoli stated that he would pay in installments consistent with prior payments. In the same affidavit, it was shown that mPhase had made payments to Charles as follows:
August 22, 2000 $ 1,475.00
October 23, 2000 15,227.85
November 9, 2000 21,589.08
November 14, 2000 15,655.03
December 7, 2000 54,390.00
January 30, 2001 19,840.00
Thus, mPhase's one payment on March 1, 2001 was not in accordance with his representation. Similarly, mPhase did not pay Charles when cash was available. At his deposition Dotoli testified that mPhase received over $1.8 million in March and April 2001, and maintained a bank balance in excess of $100,000.00. (Dotoli Deposition 36-37)
The Dotoli affidavit and deposition set forth two slightly different representations as to what kind of payment schedule was offered by mPhase and allegedly accepted by Charles.[1] However, having not lived up to either representation, mPhase may not avail itself of the equitable CT Page 16244 estoppel defense. Therefore, partial summary judgment is granted to the plaintiff on his complaint.
In light of mPhases' unresolved "set off and counterclaim" it is unclear whether a money judgment should be entered at this time. The court is inclined to enter a final judgment for the plaintiffs on the complaint. The parties are invited to provide the court on or before December 21, 2001, with legal arguments for or against such a course of action.
ADAMS, J.